# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 8, 2011

## STATE OF TENNESSEE v. ANTHONY M.  RELIFORD

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 41000446      Michael R. Jones, Judge**

---

**No. M2010-01693-CCA-R3-CD - Filed September 26, 2011**

---

The defendant, Anthony M. Reliford, pled guilty to domestic assault and aggravated assault, receiving concurrent sentences of four years and eleven months and twenty-nine days to be served in confinement.  The court further ordered that the defendant pay restitution to the victim in the amount of $830.19.  On appeal, the defendant contends that the trial court erred by: (1) imposing a fully incarcerative sentence and (2) improperly ordering restitution. Following review of the record, we affirm the sentences of incarceration but remand for reconsideration of restitution in light of the defendant's ability to pay.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part; Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Roger E. Nell, District Public Defender, and Crystal Myers, Assistant Public Defender, for the appellant, Anthony M. Reliford.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Robert J. Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The relevant facts underlying the defendant's convictions, as recited at the guilty plea hearing, are as follows:

On February third[,] 2010 the Defendant and a Ms. Burgenworth (phonetic spelling) were in a relationship; they were at 711 Spees Drive; an argument ensued; [the Defendant] and Ms. Brugenworth got into a physical confrontation whereby the Defendant slammed her to the ground. Her statement is he began - - proceeded to hit her, causing some damage to her thumb or hand, I believe it turns out to be broken; and that's the domestic assault part; February third count two.

On February fourth, the next day, 2010[,] another argument ensued at the same residence whereby the Defendant picked up a plate and threw it and hit Ms. Brugenworth in the face; again threw her to the ground, began hitting her, stomping on her head causing a severe laceration on the top of her skull resulting in quite a lot of blood loss, which there are pictures of that damage. Same time while she was on the ground he lifted her sweatshirt that she was wearing up over her face, and her words are, began to suffocate her with that.

And those [are] the facts that underlie the domestic assault in count two and the aggravated assault in count three. She was taken to the emergency room; medical records indicate that she did in deed [sic] suffer laceration, severe blood loss, other damage to her head and broken bones in her right hand.

Based upon these facts, a Montgomery County grand jury returned an indictment against the defendant. He subsequently entered open guilty pleas to one count of domestic assault and one count of aggravated assault. A sentencing hearing was then held in the circuit court of Montgomery County.

At the hearing, no witnesses were called to testify. The State, however, introduced a copy of the presentence report as an exhibit. The defendant objected to the report's admission on hearsay grounds, and the trial court overruled the objection. The defendant did not contest the information contained in the report. After reviewing the required considerations, the trial court applied one enhancement factor based upon the defendant's history of criminal convictions and found one mitigating factor based on the defendant's employment at the time of the offense. The presentence report reflected that the defendant had nine prior convictions, six of which resulted in sentences of incarceration. Based upon its findings, the court imposed concurrent sentences of four years and eleven months and twenty-nine days.

Next, the court addressed the issue of the manner of service of the imposed sentences. In determining that the sentences should be served in confinement, the court relied upon the

need for deterrence, the seriousness of the offenses, and that measures less restrictive than confinement had previously failed. The trial court also ordered the defendant to pay restitution in the amount of $830.19. This amount was determined from attachments to the presentence report noting the amount of the victim's medical bills not covered by insurance. The defendant has now timely appealed the sentencing determinations made by the trial court.

**Analysis**

## I. Sentencing

The defendant contends that the trial court erred in ordering a sentence of incarceration as opposed to an alternative sentence. When reviewing sentencing issues, the appellate court shall conduct a *de novo* review. This review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d) (2010). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id*. at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). The defendant bears "the burden of showing that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (I) the accused's potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-103, -210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2010) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain
> them are limited, convicted felons committing the most severe offenses,
> possessing criminal histories evincing a clear disregard for the laws and morals

of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . .

Under the revised Tennessee sentencing scheme, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing T.C.A. § 40-35-102(6)). Instead, a defendant not within "the parameters of subdivision (5) [of Tennessee Code Annotated section 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a) (2010). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. *Id*. at 303(b); *see also State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. *Id*. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *Goode*, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. *State v. Davis*, 940 S.W.2d 558, 560 (Tenn. 1997); *Bingham*, 910 S.W.2d at 456.

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1).  In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).  The trial court may consider a defendant's lack of truthfulness and lack of candor as they relate to the potential for rehabilitation.  *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also Dowdy*, 894 S.W.2d at 305-06.

In imposing a sentence of confinement, the trial court made the following remarks on the record:

Now, under 40-35-103, to implement the purpose of this chapter, the Court should consider - - not consider, the Court is bound by the law that the sentencing involving confinement should be based on the following consideration:

(1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct.  In looking at his misdemeanor convictions, it is a long history, however, the Court [does not] normally use misdemeanors as a long history.  This Court does not, though the Supreme Court certainly authorizes Trial Courts to do so.

(2) confinement is necessary to avoid depreciating the seriousness of the offense.  This was a very, very serious offense, and confinement is particularly suited to provide an effective deterrence to others.  I [do not] know how many domestic assault we have on today's docket, but we have them on every day's docket.  This is certainly one of the most severe, less some of the - - a death, in this matter.

(3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully.  They are not recent, but they are - - there has been a violation.  Let me look at that again.  But I believe that was on the same event date in terms of what the original offenses were, that's drug paraphernalia and marijuana possession when probation was revoked in '03. And none of the others show that probation has been revoked except in the driving under the influence in '07, which brings that up to much more current. So that it has been frequently and fairly recently revoked.

-5-

I do believe that this is a case that is so severe, so serious that it needs - - this has to be a TDOC sentence. . . .

The defendant contends on appeal that the trial court erred by imposing a fully incarcerative sentence. He finds fault with the trial court's reliance upon each of the three statutory considerations, those being deterrence, the seriousness of the offense, and that measures less restrictive than confinement had failed. We disagree and conclude that the court properly considered the required factors and sufficiently articulated on the record its basis for ordering a sentence of incarceration.

Initially, we note that a finding of any of the three enumerated factors set forth in Tennessee Code Annotated 40-35-103 is sufficient to justify imposing a sentence of incarceration. From our reading of the trial court's findings, it is clear that the court considered and found each of the three factors applicable. Although not relying upon the defendant's criminal record to support an incarcerative sentence, the court noted that the defendant's history of criminal convictions was long. We agree with the court's statements and note that the extensive history of serious misdemeanor convictions, i.e., D.U.I., driving on revoked license, criminal trespass, assault, possession of controlled substance, and possession of drug paraphernalia, would have justified the sentence.

Nonetheless, the court specifically relied upon factors (2) and (3) as set forth in the statute. The court clearly stated that it considered the offense to be very serious and that it felt that incarceration in this case would serve as a deterrent to others. The defendant contends that the deterrence issue is "an age-old debate without resolution" and, further, that the record does not support the court's determination with regard to the seriousness of the offense. With regard to deterrence, we agree that there is no proof regarding the issue presented. Moreover, we note that our supreme court has repeatedly held that "the record must contain proof of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated." *State v. Hooper,* 29 S.W.3d 1, 9 (Tenn. 2000). Although this statute "does not require proof that incarceration 'will' or 'should' deter others from committing similar crimes," the record must demonstrate that "confinement [is] 'particularly suited' to provide a deterrent effect." *Id.* After concluding that the "trial court should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need," our supreme court ruled that a reviewing court

> will presume that a trial court's decision to incarcerate a defendant based on
> a need for deterrence is correct so long as any reasonable person looking at the
> entire record could conclude that (1) a need to deter similar crimes is present
> in the particular community, jurisdiction, or in the state as a whole, and (2)

-6-

incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

*Id.* While we do not dispute that the State failed to introduce evidence regarding deterrence in this case, we note that *Hooper* addresses the issue of whether deterrence alone may support a denial of alternative sentencing and articulates the criteria for such circumstances. *See State v. Trotter*, 201 S.W.3d 651 (Tenn. 2006). In this case, the trial court also based its denial on other grounds, including the seriousness of the offense and the need to avoid depreciating the seriousness of the offense.

We are likewise unable to agree with the defendant's contention that the seriousness of the offense did not justify a fully incarcerative sentence. The defendant brutally attacked the victim over the course of two days. On each occasion, the defendant engaged in a physical attack upon the victim and forced her to the ground where he continued to attack her. As a result of these attacks, the victim suffered from a broken hand, severe blood loss, and a severe laceration which required staples. The trial court noted it was one of the most serious cases he had seen, short of murder, and we agree with those findings.

Finally, the defendant also challenges the court's finding that measures less restrictive than confinement had failed previously. His argument centers around his contention that the "information in the presentence report is hardly conclusive, and is not reliable enough to support the trial court's conclusion." This argument is misplaced. This court has consistently held that courts may rely upon the presentence report in making sentencing determinations. *State v. Adams*, 45 S.W.3d 46, 59 (Tenn. Crim. App. 2000). The report in this case established the defendant's nine prior convictions, six of which resulted in incarceration. It further indicated that he was released to unsupervised probation. Based upon its review of the record, the trial court correctly determined that measures less restrictive than confinement had been bestowed upon the defendant and that the defendant had failed to comply with the conditions. The defendant is not entitled to relief.

## II. Restitution

The defendant next contends that the trial court improperly ordered restitution. He first argues that the trial court failed to properly ascertain the amount of the loss to the victim because the decision was based upon bills which the court did not verify. The defendant also contends that the court failed to consider his ability to pay when determining the amount of restitution.

When the defendant challenges the restitution amount ordered by the trial court, this court will utilize a *de novo* standard of review with a presumption that the trial court's ruling

was correct. T.C.A. § 40-35-401(d) (2010); *State v. Johnson*, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997). The purpose of ordering restitution is to compensate the victim and to punish and rehabilitate the defendant. *Johnson*, 968 S.W.2d at 885. "In determining the amount and method of payment or other restitution, the court *shall* consider the financial resources and future ability of the defendant to pay or perform." T.C.A. § 40-35-304(d), (g) (2006) (emphasis added); *State v. Bottoms*, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). After all, "[a]n order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim." *Johnson*, 968 S.W.2d at 886. There is "no formula or method for determining restitution," but the amount must be "reasonable." *Id.* The amount "must be based upon the victim's pecuniary loss and the financial condition and obligations of the defendant; and the amount ordered to be paid does not have to equal or mirror the victim's precise pecuniary loss." *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). Pecuniary loss is defined as "(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense." T.C.A. § 40-35-304(e).

The trial court, in imposing restitution in this case, stated:

There is restitution. I don't have a calculator. I am looking at the presentence report, [it is] two hundred and twenty-eight dollars and twenty-two cents, one sixty six seventy one, one fifty seven ninety eight, thirty five eighty four, seven sixty five, one twenty seven ninety four, one zero five eighty-five. Those are the amounts after whatever insurance or TennCare, this lady had. The bills are there and they will have the name and address on them of those [whom] restitution is ordered.

As stated, the defendant first contends that the trial court failed to properly ascertain the amount of loss to the victim by relying only upon attachments to the presentence report. There is no dispute in the case that the trial court determined the amount of restitution solely from the victim's medical bills which had been attached to the presentence report. According to the defendant, the attachments were not sufficient to establish the amount because there was no way to ascertain "whether those bills reflect charges for services related to this assault, whether those bills are accurate, and whether those bills fully reflect amounts paid by insurance." While we do agree that perhaps it would have been better to have more information, such as the testimony of the victim, we cannot conclude that it was error for the trial court to rely upon the attachments to the presentence report to establish the amount of loss suffered by the victim as a result of the defendant's actions.

However, in reaching its determination that this was the proper amount of restitution,

we cannot conclude that the trial court in any way considered the defendant's ability to pay. The brief comments made by the trial court in no way reflect any consideration of the defendant's financial situation. The State counters that the trial court considered the defendant's financial resources and his ability to pay, arguing that: (1) the court considered the presentence report, which included information about the defendant's education; and (2) the court considered the argument of the defendant's counsel that the defendant is able to "work and get a job and pay restitution." The State's contentions are misplaced. As pointed out by the defendant, his past job history and education are relevant to his future ability to pay only if he is permitted to obtain employment. By ordering that the sentence be served in confinement, his ability to obtain employment became irrelevant. We see nothing in the record to support a finding that the trial court properly weighed and considered the defendant's ability to pay the ordered restitution. As such, remand is necessary. On remand, the trial court must consider the defendant's financial ability to pay before determining the proper amount and method of payment of restitution.

As an aside, we note that a discrepancy exists between the total of the amounts listed by the trial court on the record and that reflected on the judgment. The sum of the enumerated figures is $830.19, while the judgment reflects $840.19. In cases such as this, when a discrepancy exists between a transcript of court proceedings and a judgment order, the transcript controls. *State v. Tamela T. Scott*, No. M2006-02067-CCA-R3-CD (Tenn. Crim. App. at Nashville, Sept. 17, 2008). If, following the remand hearing, the trial court determines that the original amount is, in fact, the proper amount and method of payment of restitution, a corrected judgment form reflecting the accurate total should be entered.

## CONCLUSION

Based upon the foregoing, the decision of the trial court imposing sentences of confinement is affirmed. The case is remanded, however, for a hearing to determine the proper amount and method of payment of restitution in light of the defendant's ability to pay.

_____
JOHN EVERETT WILLIAMS, JUDGE